

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHERRIE L. GAGE,                    )
                                    )
            Plaintiff,              )          Case No: 02 C 9369
                                    )
      v.                            )          Magistrate Judge Morton Denlow
                                    )
METROPOLITAN WATER                  )
RECLAMATION DISTRICT OF             )
GREATER CHICAGO,                    )
                                    )
            Defendant.              )

## MEMORANDUM OPINION AND ORDER

This case comes before this Court on motions *in limine* filed by the parties in preparation for trial. The plaintiff, Cherrie L. Gage ("Plaintiff" or "Gage"), brought three motions *in limine*; the defendant, Metropolitan Water Reclamation District of Greater Chicago ("Defendant" or "the District"), brought eight motions *in limine*. These motions were referred by District Court Judge Marvin E. Aspen for resolution pursuant to 28 U.S.C. §636(b)(1). This Court held oral arguments on March 30, 2005, and announced its rulings from the bench. This memorandum opinion provides additional explanation for the Court's rulings.

## I. BACKGROUND FACTS

Plaintiff filed a four-count amended complaint against Defendant alleging three counts of racial discrimination under Title VII, 42 U.S.C. §2000e, *et seq*:  hostile work

environment, discriminatory demotion (i.e., the termination of the Plaintiff's probationary status) and retaliation, and one count of municipal liability under 42 U.S.C. § 1983 alleging a widespread policy and practice of racial discrimination (i.e., depriving African-American employees of their constitutional rights). Upon a motion for summary judgment, the district court dismissed all the claims except the claim for discriminatory termination of the probationary period. *Gage v. Metropolitan Water Reclamation Dist. of Greater Chi.*, No. 02 C 9369, 2004 WL 1899902, at *19 (N.D. Ill. Aug. 18, 2004).

All of the following facts are taken from the "Background Section" of Judge Aspen's August 18, 2004, opinion on Defendant's motion for summary judgment. *Id.* at *1-*6. Gage was hired by the District in 1989 as an administrative assistant. In 1991, she was appointed to a Management Analyst I ("MAI") position in the Maintenance and Operations ("M & O") Department. She was transferred from the M & O Department to a MAI position in the Research and Development ("R & D") Department in 1995 and received positive reviews for her work as a MAI. In 1999, Gage was appointed to a position as a Management Analyst II ("MAII") in R & D, and completed her probationary period[1] on January 1, 2000. She received a rating of "Exceeds Standards" for her work in 1998 and 1999. After passing the required examination, Gage was appointed to a Management Analyst III ("MAIII") position in the M & O Department on November 17, 2000. The probationary period for this

_____

[1] When an individual is appointed to a civil service position at the District, the appointment is a probation that constitutes a working test period. During that period, the employee can be evaluated to determine if she is performing the job duties satisfactorily.

2

position is one year.

As a MAIII, Gage's direct supervisor was Michael Bland. Bland, a MAIV, had worked at the District since 1977. Bland, who is white, was responsible for evaluating Gage's work and completing reports on her service throughout her probationary period. Bland supervised three units in M& O. Gage took over the MAIII position from a white female, who had been performing the job in a temporary capacity. On Plaintiff's first day, Bland told her, "You are a beautiful woman. No. You are a beautiful black woman, but that's not what you are being evaluated on." The following day, Gage notified Bland that she was disturbed by his comment; Bland testified that it was "a frustration statement." Following this conversation, Bland began maintaining a log documenting Gage's whereabouts, work hours, and other activities. Bland did not keep logs on the other managers he supervised, Elizabeth Collins (MAIII) or Linda Dunlap (Senior Personnel Analyst), both white females, or Karen Sizemore (MAII), Gage's white female predecessor.

On Gage's first evaluation, which covered the first three months of the probationary period, she received an overall rating of "Requires Improvement." Gage disagreed with the evaluation and composed a written response, which she sent to the District's Director of Personnel, the Assistant Chief Engineer, and Bland. She also wrote a letter to the District's Equal Employment Officer, raising her concerns about the evaluation. Gage received a similar evaluation on her six-month review. She refused to sign the evaluation, and met with Tom O'Connor, the Chief of the M & O Department, to inform him that she felt Bland had

3

unfairly rated her. She informed O'Connor about Bland's "beautiful black woman" comment and sent another written response to O'Connor and Bland's other supervisors. Gage's nine-month evaluation was substantially the same, and on August 23, 2001, she again composed a written response, this time stating that Bland's behavior since her first day had been discriminatory and harassing. On August 31, 2001, Bland issued a written warning because Gage remained in the office building past 4:45 p.m. to compose her response of August 23rd.

Pursuant to O'Connor's request, Equal Employment Officer Frances Wilkins ("Wilkins") conducted an inquiry into Bland's three-month and six-month performance evaluations of Gage. As part of her investigation, Wilkins interviewed Gage, Bland, and Cargill, one of Bland's supervisors. On September 19, 2001, Wilkins issued her report outlining her inquiry into Gage's complaints. Wilkins's report concluded that Gage's work volume rating for the first three months did not take into consideration the fact that Plaintiff had actually worked only the last six weeks of the first three-month rating period. Wilkins found that Bland's failure to take account of that disparity was improper. Wilkins determined, however, that the other ratings Plaintiff received did not warrant change.

On October 31, 2001, Bland completed his one-year report on Plaintiff's performance during her probationary period, rating her overall performance as "Not Satisfactory." Bland recommended that Plaintiff's probationary period be terminated. Bland met with his supervisor, Gary Ziols ("Ziols"), Assistant Chief Engineer, about his recommendation. Ziols approved the termination. Ziols then met with his supervisor, O'Connor, who signed off on

4

the recommendation. Subsequently, O'Connor met with the District's General Superintendent, John Farnan, who then terminated Plaintiff's probationary period.

Following the termination of her probation as a MAIII in the M & O Department, Plaintiff began work as a MAII in the R & D Department. She received the rating of "Highly effective" in December 2002. Plaintiff continues to work for the District.

## II. LEGAL STANDARDS

A motion *in limine* refers "to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered. *Luce v. United States*, 469 U.S. 38, 40n.2 (1984). District courts have the authority to rule on motions *in limine* pursuant to their inherent authority to manage trials, even though such rulings are not explicitly authorized by the Federal Rules of Evidence. *Id.* at 41n.4; *see Mountain Funding, Inc. v. Frontier Ins. Co.*, No. 01 C 2785, 2004 WL 868366, at *2 (N.D. Ill. Apr. 22, 2004). District judges have broad discretion in ruling on motions *in limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). In order to exclude evidence on motions *in limine*, however, the evidence must be inadmissible on all potential grounds. *Luce,* 469 U.S. at 41n.4. Otherwise, rulings should be deferred to the time of trial, so that questions of relevancy, foundation and potential prejudice may be resolved. *See Mountain Funding,* 2004 WL 868366, at *2. A ruling on a motion *in limine* is not necessarily a final one. Trial judges are free to alter previous *in limine* rulings, within the bounds of sound judicial discretion. *Luce,* 469 U.S. at 41.

5

## III. DISCUSSION

Plaintiff has filed three motions *in limine* to exclude: (1) insinuations that Gage was originally hired due to a romantic relationship and insinuations about Gage's children and her martial status, (2) the fact of an unadjudicated 1997 EEOC charge of promotion discrimination filed by Gage, and (3) reference to a diagnosis of Delores Stewart as "Manic-Depressive" or "Bipolar."[2] The Defendant has filed eight motions *in limine* to exclude: (1) stray remarks allegedly made by Michael Bland, (2) evidence regarding events before and after Gage's probationary period, (3) evidence and questions regarding Wilkins' investigation, (4) evidence regarding non-similarly situated employees, (5) the testimony of the District's Commissioners, (6) materials submitted to the EEOC, (7) statistical evidence and (8) recommendations and testimony of Callie Baird.[3]

### A.    PLAINTIFF'S MOTIONS *IN LIMINE*

The Plaintiff brought three motions *in limine* to exclude testimony relating to aspects of her personal life, P. Mot. 1, a prior, unadjudicated EEOC charge of discrimination, P. Mot.

---

[2]These motions will be numbered P. Mot. 1, P. Mot. 2 and P. Mot. 3, respectively. The Defendant's response addressed all of these motions and will be referred to as D. Resp.   The Plaintiff's reply brief also addressed these motions collectively and will be referred to as P. Reply.

[3]These motions will be numbered D. Mot. 1, D. Mot. 2, D. Mot. 3, D. Mot. 4, D. Mot. 5, D. Mot. 6, D. Mot. 7 and D. Mot. 8, respectively. The Plaintiff responded to each of these motions individually and will be referred to as P. Resp. 1, P. Resp. 2, P. Resp. 3, P. Resp. 4, P. Resp. 5, P. Resp. 6, P. Resp. 7 and P. Resp. 8, respectively. The Defendant also submitted reply briefs for each of their motions and will be referred to as D. Reply 1, D. Reply 2, D. Reply 3, D. Reply 4, D. Reply 5, D. Reply 6, D. Reply 7, and D. Reply 8, respectively.

2, and a witness's diagnosis of bipolar disorder and prescription drug use, P. Mot. 3. This Court now addresses the Plaintiff's three motions in turn.

### 1. Aspects of Plaintiff's Personal Life - P. Mot. 1

In P. Mot. 1, the Plaintiff seeks to exclude as not relevant an insinuation that she was originally hired by the District due to an alleged romantic relationship with one of the District's Commissioners and to exclude insinuations relating to the Plaintiff's children and marital status. The term "relevant evidence" is defined in Rule 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 402 states that "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. The District does not dispute the irrelevance of the alleged romantic relationship and such testimony will be excluded by agreement of the parties.

As for the second part of the motion relating to evidence regarding the Plaintiff's children and marital status, the Defendant concedes there is no relevant evidence that could be proffered on the issue of liability, but argues that such evidence is relevant to the issue of damages. Gage is claiming $300,000 in damages for pain, suffering, and emotional injury without the aid of any medical testimony. The Defendant disputes this figure and as a result must be afforded the opportunity to inquire about alternative stressors in the Plaintiff's life in order to show that the $300,000 amount claimed by Plaintiff may have been caused by these other stressors.

As justification for its position, the District cites *York v. American Telephone & Telegraph Co.*, which allowed the defendant to introduce into evidence the plaintiff's eight year long divorce proceeding as an alternative cause for the plaintiff's emotional distress. 95 F.3d 948, 957 (10th Cir. 1996). Within the Seventh Circuit, plaintiffs' concerns for privacy have been subrogated to the rights of defendants to properly inquire into the cause of alleged pain and suffering. *Kessell v. Cook Co.*, No. 00 C 3980, 2002 WL 398506, *2 (N.D. Ill. Mar. 14, 2002). Like the defendants in these cases, the District has the right to present alternative causes for the Plaintiff's emotional distress, including Plaintiff's stress as the sole-caretaker of two pre-teen children. Thus, for the purposes of damages only, information pertaining to the Plaintiff's children and the Plaintiff's status as a sole-caretaker may be admitted into evidence for the period of time for which Plaintiff seeks damages, and the Plaintiff's motion with respect to these two inquiries is denied.

Federal Rule of Evidence 403 sets the outer bounds of the Defendant's allowable inquiry. Rule 403 states that evidence offered by the Defendant, while relevant, can still be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Thus, an inquiry into whether the Plaintiff bore her children out of wedlock is not probative of the question of alternative causes of stress at the time of the adverse employment action. By agreement of the parties, this area of inquiry is excluded and the motion *in limine* is granted.

Accordingly, P. Mot. 1 is denied with respect to the inquiry into the Plaintiff's children and status as a single mother as it pertains to the issue of damages and granted with respect to the insinuations relating to the romantic relationship with a District Commissioner, and references to the Plaintiff having children out of wedlock.

### 2. Unadjudicated EEOC Claim - P. Mot. 2

In P. Mot. 2, Plaintiff seeks to exclude evidence of an unadjudicated 1997 EEOC charge of promotion discrimination. The Defendant agrees that the prior EEOC has no relevance to this case. Accordingly, this Court grants the Plaintiff's motion to exclude the 1997 EEOC charge.

### 3. Witness's Mental Disorder and Prescription Drug Use - P. Mot. 3

In P. Mot. 3, Gage seeks to exclude reference to a diagnosis of Dolores Stewart, a key witness for the Plaintiff, as "bipolar" or "manic depressive" on the grounds that it is overly inflammatory, irrelevant, and would be proffered without sufficient medical expert foundation. The Defendant argues that such information is admissible as it goes to the credibility of the witness and directly affects the ability of the witness to testify accurately. Furthermore, the Defendant argues that expert medical testimony is not required to establish sufficient foundation as the witness is "more than competent to answer questions about her own condition without medical testimony or expert opinion." D. Resp. 3 at 6.

Beginning in 1993, Ms. Stewart was diagnosed with bipolar disorder, a mental disease commonly referred to as "manic depression." Since the diagnosis, she has been prescribed Prozac, Lithium and Paxil and potentially could be on the medication when called to testify at trial. As the Defendant notes, the American Psychiatric Association has found that persons with bipolar disorder may suffer from increased irritability, an impaired ability to think clearly, and memory difficulties. In addition, the Defendant cites a medical reference guide indicating that Prozac and Lithium have been known to impair judgement in thinking and to cause blackouts and confusion. *Physician's Desk Reference,* 963, 965 (54th ed. 2000).

While courts have occasionally differed as to the circumstances under which evidence of a witness's drug use may be admitted, the vast majority recognize that mental capacity and drug use, however lawful, may affect a witness's credibility. For example, in *Chnapkova v. Roh,* the Second Circuit described the district court's refusal to allow a defendant to cross examine an adverse witness about her schizophrenic mental condition as an abuse of discretion. 59 F.3d 341, 347 (2d Cir. 2002). In making its determination, the *Chnapkova* court noted that schizophrenia may "grossly distort" a witness' reaction to events. *Id.* As a result, the court concluded that a defendant should be able to use evidence of an existing mental defect to impeach a witness's credibility. Bipolar disorder, like schizophrenia, can distort a witness' reaction to events. The psychological manual cited by the District lists as a symptom of bipolar disorder increased irritability and an impaired judgment. As a result, the District, like the defendant in *Chnapkova,* should be provided with the opportunity to

cross-examine a Plaintiff's witness regarding her mental capacity.

However, such an opportunity can only be afforded if it is relevant. *See* Fed. R. Evid. 402. While the parties' motions discuss traumatic events in Ms. Stewart's life going back twelve years, this Court believes only two such points in time are relevant to this case–the time of the alleged incidents and the time Ms. Stewart is on the witness stand giving testimony. Ms. Stewart has been able to function in the workplace throughout her experience with these drugs, and as the Court learned in oral argument, Ms. Stewart did not require any medications at the time of incidents. In fact, the Defendant has offered nothing to suggest that Ms. Stewart has ever actually suffered the possible side effects it cites in its Response brief.

Thus, in order to assess whether an inquiry into Ms. Stewarts's mental disorders and medications is of any relevance to the Plaintiff's discrimination claim, the Court will conduct a *voir dire* outside the presence of the jury in order to determine whether Ms. Stewart is currently being treated or taking any medications and whether she was being treated or taking medications at the time of the incidents to which she will testify.

The Plaintiff also contends that an examination of Ms. Stewart's medical condition is improper because any evidence regarding her medical condition requires expert testimony. While medical evidence may be difficult to understand without the use of an expert opinion, courts have routinely held that lay individuals are certainly capable of reliably understanding and testifying to their own medical condition. *Collins v. Kibort,* 143 F.3d 331, 337 (7th Cir.

11

1998). In *Collins*, the Seventh Circuit noted that not every piece of medical evidence requires expert testimony. When a witness testifies as to the general nature of his health, the Seventh Circuit allows it to be admitted. *Id.* Accordingly, this Court must reserve its judgment on the admissibility of the witness's diagnosis as bipolar and accompanying use of Prozac, Lithium, and Paxil for trial.

## B. DEFENDANT'S MOTIONS *IN LIMINE*

The Defendant has filed eight motions *in limine* to exclude testimony relating to stray remarks made by Michael Bland, to bar evidence regarding events before and after Gage's probationary appointment, to limit evidence and questioning regarding the Wilkins' investigation, to exclude evidence regarding non-similiarly situated employees, to exclude testimony of District Commissioners, to exclude materials submitted to the EEOC, to exclude statistical evidence, and to exclude the recommendations and testimony of Callie Baird. This Court now addresses these eight motions in turn.

### 1. Statements allegedly made by Michael Bland - D. Mot. 1

In D. Mot. 1, Defendant requests the Court to exclude statements allegedly made by Michael Bland to Plaintiff and to a clerical employee in Bland's department, Delores Stewart ("Stewart"). The alleged statements to Stewart include the following: (1) a comment about how African-Americans styled their hair; (2) a comment to Stewart about eating rib tips in the morning; (3) a comment about Stewart's multiple ear-piercing being a gang thing; (4) a comment to Stewart about reparations for slavery and that Bland's great-grandfather may

12

have owned slaves; (5) a comment in response to Stewart wearing overalls to work one day asking Stewart if she was going to pick cotton; (6) a comment to Stewart about Bland's feelings regarding people using race as an excuse to not to do their job; and (7) a note Bland wrote that "Delores [Stewart] was observed eating fried chicken and macaroni and cheese" and another note regarding "mumbling and grumbling from Delores about being denied a raise." The statement Bland made to Plaintiff is: "You are a beautiful woman. No. You are a beautiful black woman, but that's not what you're being evaluated on." The Plaintiff's response also raises other comments that Bland allegedly made at management meetings regarding his philosophy on race that included more than simply his assessment of African-Americans. This Court breaks the analysis of this motion into three components: 1) comments made directly to Gage; 2) comments regarding Bland's philosophies on race and employment; and 3) comments not directed to Gage nor related to Bland's employment philosophy.

a. **Comments made directly to Gage.**

Defendant asks this Court to exclude the "Beautiful black woman" comment that Bland made to Gage on the basis that it is: not contemporaneous to Bland's decision to terminate Gage's probationary position as a MAIII under his supervision; not causally related to that decision; and unfairly prejudicial to Defendant. As demonstrated above, evidence of alleged discriminatory conduct is probative of discriminatory intent regardless of whether it is contemporaneous, particularly when it is conduct by the supervisor. Moreover, the time

13

period in question is Gage's entire probationary period, which means that this comment is contemporaneous with the employment decision in question.

Defendant also argues that Bland's statement to Plaintiff is not causally related to the employment decision that Bland made because what he said was that he would *not* take her race into account. The standard for evaluating such stray remarks is that there be "some nexus between this type of stray remark and the challenged employment decision...." *Cowan v. Glenbrook Sec. Servs.*, 123 F.3d 438, 444 (7th Cir. 1997). This evidence is sufficiently related to the decision because regardless of Bland's intent, the fact that Bland brought up race at all is sufficient to raise a question of fact as to whether Gage's race was a factor in Bland's decision to terminate her probationary position as a MAIII. Thus, D. Mot. 1 is denied with respect to the remarks made directly to Gage.

**b.      Stray Comments.**

Defendant contends all evidence relating to comments allegedly made by Bland to Stewart should be excluded because they are hearsay. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay is generally inadmissible. Fed. R. Evid. 802. However, a statement is not hearsay when "it is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" Fed. R. Evid. 801(d)(2)(D). Additionally, as the Plaintiff responds, these statements fall into the party

14

admissions exception to hearsay as described in Rule 801(d)(2)(D). Plaintiff responds that the statements are not hearsay because they are not being offered for their truth, but instead as circumstantial evidence of Bland's discriminatory animus. This Court agrees and finds that the statements are not hearsay because they are not being offered for their truth, but rather are offered to show intent.

Defendant further contends that the alleged comments by Bland to and about Stewart should be excluded because they are irrelevant to the issue of whether the Defendant intentionally discriminated against Gage when Bland terminated Gage's probationary employment. Relevance turns on the ability of the evidence in question to make a particular fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401. "The relevance threshold is low as the evidence need only 'tend' to make the fact of consequence more probable.., thus requiring merely a rational connection between the evidence offered by the litigant and the fact of consequence the litigant intends to establish." *Int'l Merger & Acquisition Consultants, Inc. v. Armac Enter. Inc.,* 531 F.2d 821, 823 (7th Cir. 1976); *Schuster v. Shepard Chevrolet,* 2002 WL 507130, at *13 (N.D. Ill. Apr. 3, 2002). Because "in today's politically correct workplace environment" it is rare for a decision-maker to admit that his actions were based on racial animus, a plaintiff in a discrimination case may prevail by "constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decision-maker." *Jordan v. City of Gary,* 396 F.3d 825, 832 (7th Cir. 2005) (internal quotations omitted).

15

In this case, the statements in question may help form the mosaic that the *Jordan* court has recognized. However, this mosaic cannot be permitted to include any statement Bland made to anyone at anytime. If this Court were to allow any and all statements to come into evidence it would allow a juror to find Bland liable not for his racial animus in making his decision to terminate Gage but rather because of Bland's bigoted remarks. As the Seventh Circuit has noted: "bigotry, per se, is not actionable. It is actionable only if it results in injury to a plaintiff; there must be a real link between the bigotry and an adverse employment action." *Adams v. Wal-Mart Stores,* 324 F.3d 935, 939 (7th Cir. 2003). Thus, this Court must balance the right of the plaintiff to present indirect evidence that serves as the basis for an "inference of discrimination" with the need to avoid the suggestion of a decision to be made on an improper basis (*i.e.* that Bland may harbor bigoted views).

Thus, in order to properly balance these concerns, the court must disallow all comments that involve Bland's thoughts on non-African Americans but allow the Plaintiff to have a window of time from which Bland's stray remarks about African-Americans may be used to create a mosaic of discrimination. Certainly, remarks made by Bland while the Plaintiff was under his supervisor would be relevant. Additionally, this Court believes extending the time-frame by one year before and after Gage's probationary period would adequately allow the Plaintiff to develop its mosaic of circumstantial evidence as to whether Bland's decision to terminate Gage's probation was based on a legitimate business reason or on racial animus as alleged by Gage. Racially tinged comments made by Bland to Stewart

16

or others within one year before and after Gage's probationary period would be pertinent to a jury's determination of Bland's mental state.

### c. Comments Regarding Bland's Philosophy on Management and Race.

The final type of remarks included in this motion are those involving Bland's management philosophy in regards to race. Since the only issue before the Court is whether Bland's managerial decision to terminate Gage's employment was based on racial animus, statements made by Bland regarding his management philosophy in regards to race are relevant. For example, Bland stated that minorities use race, gender and religion as an excuse not to do their job and frequently brought up racial issues in meetings. Thus, Gage must be permitted to introduce statements of this type because the remarks go directly to proving racial animus. Since these comments have a far greater probative value than the remarks of the truly "stray variety" referenced above, Gage must be allowed a wider time frame from which to pursue this line of inquiry. Hence, this Court will permit Gage to enter into evidence comments in which Bland discusses his management opinions regarding minority employees made up to five years before Gage's probationary period began and thru a period of one year after her termination.

### 2. Events *before* and *after* Gage's probationary period under Bland - D. Mot. 2

Defendant's second motion, D. Mot. 2, requests this Court to exclude evidence about events occurring before and after Plaintiff's probationary appointment. Specifically, Defendant seeks to bar evidence about four specific events on the grounds that the probative

17

substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or considerations of undue delay. *See* Fed. R. Evid. 403. This Court now addresses these events in turn.

### a. Gage's prior and subsequent performance reviews

The District seeks to exclude evidence of Gage's prior and subsequent performance reviews because of the danger of confusion of the issues and considerations of undue delay. As Rule 403 states, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of . . . confusion of the issues or . . . considerations of undue delay. . . ." In this circuit, previous employment history may be relevant in assessing job performance at the time of termination, but its limited utility must be recognized. *Fortier v. Ameritech Mobile Communications, Inc.,* 161 F.3d 1106, 1113 (7th Cir. 1998). Defendant argues Gage's previous and subsequent performance evaluations are not relevant because her job responsibilities as a probationary MAIII were significantly different from her responsibilities as a MAII. Therefore, prior and subsequent evaluations do not provide any indication of how she performed during the time Bland was her supervisor. Defendant further argues that admission of this evidence would confuse the jury and expand the length of the trial. In response, Gage argues that the two positions are in fact similar; therefore, the prior and subsequent evaluations are relevant to demonstrate that Bland's negative evaluations were a pretext for intentional discrimination.

Although the job descriptions for MAII and MAIII differ, the two are not so different

18

as to render evidence of prior and subsequent performance reviews at the MAII level completely irrelevant to Gage's performance at the MAIII level. It also seems unlikely that admission of this evidence would cause a jury to conduct a mini-trial into the differences between the two positions such that the length of the trial would be significantly expanded. Therefore, the Court finds that the danger of confusion of issues and undue delay does not substantially outweigh the probative value of Gage's prior and subsequent performance reviews. Accordingly, this Court denies this part of the Defendant's motion and will permit the introduction of Gage's MAII performance reviews for a limited period both before and after her MAIII probationary period.

### b. Ziols' "poster boy" comment to Bland

Defendant also seeks to exclude evidence that Bland's supervisor, Ziols, told Bland he was becoming a "poster boy" for discrimination claims. The comment was made after Gage filed this lawsuit. As Judge Aspen stated, the probative value is diminished because the comment was made after Gage left Bland's supervision. *Gage*, 2004 WL 1899902 at *7n. 8. Defendant argues that the evidence should be excluded because the risk of unfair prejudice outweighs any probative value. Gage argues, however, that the remark is relevant to demonstrate that Bland has a continuing problem supervising minorities, and that the evidence should be admitted in the context of a potential cross-examination of Ziols. As stated earlier, the sole issue in this case is whether Bland's decision to determine Gage's probation was based on racial animus. A stray comment made by someone other than the

decision maker after the decision maker had already made his decision, simply bears no relevance on the issue in this case. Thus, the Court grants this part of the District's motion *in limine.*

### c.  Confrontation between Plaintiff's mother and Bland

The Defendant also asks this Court to exclude evidence of a confrontation between Gage, her mother, and Bland. Gage's mother came to visit her at work after Bland had terminated her. There was a confrontation between Gage's mother and Bland that led to an attempt by the District to suspend Gage. That suspension was later rescinded. The Defendant argues this evidence is not relevant because the incident occurred after Plaintiff's probationary appointment was terminated. The Defendant further argues the evidence should be excluded because it is unfairly prejudicial, will confuse the jury, and will cause undue delay. This Court agrees. As the Plaintiff's response indicates, no statements racial in nature were made during the confrontation. All this confrontation shows is that the Gages and Bland do not particularly like each other. It has nothing to do with the reasons for Gage's termination. Hence, this Court will exclude the evidence and grant this part of the Defendant's motion.

### d.  Performance of Plaintiff's successor

Finally, Defendant seeks to bar evidence about the performance of Plaintiff's successor, Hoffman. In a case of intentional discrimination, circumstantial evidence is admissible to show discriminatory intent. *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736

(7th Cir. 1994). One type of circumstantial evidence is evidence "that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment." *Troupe*, 20 F.3d at 736. Another type of evidence is that "the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination." *Id.* Defendant argues that evidence about Hoffman's job performance is irrelevant and, moreover, that Plaintiff lacks personal knowledge of his performance and therefore is unqualified to testify.

In response, Plaintiff argues that evidence about the disparity between how Bland treated Gage and her successor is relevant circumstantial evidence to prove discriminatory intent. Specifically, it shows that while Hoffman and Gage were similarly situated in all matters other than race, Hoffman received far better treatment than Gage. Therefore, the evidence of Hoffman's treatment under Bland is admissible as circumstantial evidence under the *Troupe* standard. Whether there was disparity in Bland's treatment of Plaintiff and Hoffman is an issue to be decided by the jury. Accordingly, Defendant's second motion is denied with respect to evidence of the performance of Plaintiff's successor.

### 3. Evidence and Questioning Regarding Wilkins' Investigation - D. Mot. 3

In D. Mot. 3, Defendant requests this Court to limit the scope of evidence and questioning related to an internal investigation of Plaintiff's work evaluations conducted for

21

the District by its Equal Employment Officer ("EEO"), Frances Wilkins ("Wilkins"). Defendant contends that evidence should be excluded because its possible relevance is substantially outweighed by the dangers of confusion of the issues and misleading the jury.

Specifically, the Defendant seeks to limit evidence of Gage's complaints to the complaint she actually filed with Wilkins. Defendant argues that Plaintiff did not complain about discrimination until near the end of her probationary period and that she failed to use the District's complaint procedure and therefore, should be barred from introducing evidence of her informal complaints. In response, Plaintiff argues that she complained about discrimination all along, and that her informal complaints should be considered as circumstantial evidence of Defendant's discriminatory animus towards her.

The issue therefore, is whether the Wilkins investigation had any impact on Bland's decision to terminate. Thus, if Bland used this report as endorsing his treatment of Gage, then the details of the investigation are certainly relevant as they make evidence of pretext more probable. *See Davis v. Con-Way Transp. Cent. Express*, 368 F.3d 776, 784 (7th Cir. 2004) ("A pretext for discrimination...means something worse than a business error; pretext means deceit used to cover one's tracks.") (*quoting Grube v. Lau Indus., Inc.*, 257 F.3d 723, 730 (7th Cir. 2001). Accordingly, this Court denies the Defendant's motion *in limine*.

### 4. Evidence Regarding Non-Similarly and Similarly Situated Employees - D. Mot. 4

In D. Mot. 4., Defendant requests this Court to exclude evidence regarding Bland's treatment of other employees. Specifically, Defendant seeks to exclude evidence relating to

22

Bland's treatment of other minority employees, both African-American and non African-American, and evidence of performance evaluations and personnel files of non-probationary employees, because none of these employees are similarly situated to Plaintiff. Furthermore, Defendant argues that this evidence should be excluded both because it is inadmissible character evidence and because it will unnecessarily lengthen the trial by creating mini-trials.

### a.  Plaintiff's predecessor and successor are similarly situated

Defendant seeks to exclude evidence regarding Bland's alleged mistreatment of employees other than Gage because none of those employees are similarly situated to her. Employees are considered to be similarly situated for employment discrimination claims when they are directly comparable in all material respects. *Ajayi v. Aramark Bus. Servs., Inc.,* 336 F.3d 520, 531-32 (7th Cir. 2003). The *Ajayi* court noted four relevant factors which may be used to determine whether two employees are directly comparable: (1) whether they held the same job description, (2) whether they were subject to same standards, (3) whether they were subordinate to the same supervisor and (4) whether they had comparable experience, education, and other qualifications. *Ajayi*, 336 F.3d at 532.

In the instant case, Plaintiff seeks to offer evidence about Bland's treatment of other African-American and minority employees. Plaintiff argues that this evidence is probative to demonstrate that Bland consistently treated Plaintiff and other minorities under his supervision worse than Caucasian employees. Defendant argues that this evidence is not relevant because none of these other employees are similarly situated to Plaintiff. An

23

examination of the relevant factors demonstrates that none of the other African-American or minority employees held the same job description as Plaintiff. All of the other African American employees held clerical positions, which meant that they were not held to the same standard as Plaintiff. The other minority employees also were not held to the same standard as Plaintiff, because none of them worked directly under Bland as a MAIII. This Court agrees and finds that the African-American or other minority employees are not similarly situated to Plaintiff and therefore, grants D. Mot. 4 with respect to this area of inquiry.

Plaintiff also seeks to offer evidence about Bland's treatment of certain Caucasian employees. Two of these employees, Collins and Dunlap, were supervisors; Wagner was a MAII who worked under Bland's supervision; Sizemore was Plaintiff's predecessor; and Hoffman was Plaintiff's successor. *Id.* The two supervisors, Collins and Dunlap, did not hold the same position as Plaintiff, were held to a different standard, and did not work under Bland's supervision; accordingly, neither is similarly situated to Plaintiff. Wagner, a MAII, was not required to run a unit. Therefore he too was held to a different standard than Plaintiff and is not similarly situated. However, Sizemore and Hoffman held the same job as Plaintiff, were judged by a very similar if not identical standard, and worked under Bland's supervision. Defendant argues that Sizemore and Hoffman are not similarly situated to Plaintiff because, unlike Plaintiff, neither of them was a probationary employee. However, the Court finds that they are sufficiently similarly situated to make such evidence useful for the jury to consider.

24

### b. Performance Evaluations and Personnel Files

Defendant also seeks to exclude evidence of performance evaluations and personnel files of the aforementioned Caucasian employees. Defendant argues that the performance evaluations are not relevant because the employees either were not probationary employees or they held different positions than Plaintiff, and therefore the forms used to evaluate these employees differed from the forms used to evaluate Plaintiff. Defendant argues that the personnel files are not relevant because the information contained within the files is personal and because the employees were not similarly situated to Plaintiff. This Court holds that performance reviews and personnel files of only the Plaintiff's predecessor and successor are admissible as circumstantial evidence as long as the personnel files are redacted to remove personal information such as social security numbers, home addresses, and benefits information.

Finally, Defendant seeks to exclude evidence regarding Bland's alleged mistreatment of employees other than Plaintiff because such evidence is improper evidence of Bland's prior "bad acts," and also because admission of such evidence will lengthen the trial by creating mini-trials. However, this argument was directed toward evidence of Bland's alleged treatment of other African-American and minority employees. This Court has determined that Plaintiff may only introduce evidence relating to similarly-situated employees, both of whom are Caucasian. Accordingly, D. Mot. 4 is granted except for evidence relating to Sizemore and Hoffman, which will be admitted.

25

5. **Defendant's Motion to Exclude Testimony of District Commissioners - D. Mot. 5**

In D. Mot. 5, the issue is whether Barbara McGowan, James Harris, or other District Commissioners should be excluded from testifying in this case. The Defendant raises two arguments as to why the Commissioners should be barred from testifying: 1) the Commissioners lack personal knowledge, and 2) the Commissioners are high ranking officials and should not be made to testify under the circumstances.

      a.    **Lack of Personal Knowledge**

First, Defendant claims that McGowan and Harris have no personal knowledge or probative information regarding this case because the Commissioners merely listened to complaints made by the Plaintiff. Other than that, Defendant claims that the Commissioners played no role in decisions made regarding personnel, including the investigation of Plaintiff's claims or her eventual demotion from the MAIII position. Because the Commissioners only know what the Plaintiff told them, Defendant argues that their testimony would merely duplicate the Plaintiffs'. Therefore, because they lack unique personal knowledge, Defendant claims that any testimony by the Commissioners would be inadmissable under Rule 602. Also, to the extent that the Commissioners would be called to testify about what the Plaintiff told them, their testimony would be inadmissable hearsay under Rule 802.

Plaintiff asserts that the Commissioners do have relevant personal knowledge because the Plaintiff discussed her complaints with them. Furthermore, the Commissioners'

testimony could be relevant to the issue of whether the District ignored Plaintiff's complaints and whether the grounds given for terminating her probation were pretextual.[4]

In this case, the Commissioners' testimony is not relevant. The conversations between Plaintiff and the Commissioners may have been relevant to the Plaintiff's §1983 claim or to her harassment claim. The conversations are not, however, relevant to the Plaintiff's remaining termination claim. As the Defendant's motion indicates, the Commissioners were not involved in Plaintiff's personnel decisions. Thus, the Commissioners could say nothing that would make the question of racial animus in the decision to terminate any more or less probable. In *Swanson v. Legett & Platt Inc.*, the Seventh Circuit noted that statements made by a non-decision maker are only relevant to the question of animus if the non-decision maker influenced the decision. 154 F.3d 730, 733 (7th Cir. 1998). In this case, it is uncontested that the District Commissioners did not play a role in personnel decisions. Accordingly, this Court grants D. Mot. 5.

### 6. Materials Submitted by the District to the EEOC - D. Mot. 6

In D. Mot. 6, Defendant seeks to exclude evidence regarding the position statement the District submitted to the EEOC about Plaintiff. Defendant argues that the evidence should be excluded because it is not relevant. In response, Plaintiff argues that the position statement is relevant and admissible as evidence of pretext.

---

[4] Plaintiff alleges that McGowan told her that McGowan had heard reports that Plaintiff was "hardheaded" and that her problems with Bland had nothing to do with her ability.

The issue here is whether the information in the District's position statement to the EEOC is inconsistent with other statements the District has made in this litigation. "An employer's position statement in an EEOC proceeding may be admissible to the extent it constitutes an admission, or to show the employer has given inconsistent statements in justifying its challenged decision, which may tend to prove that its stated reasons are pretexts." *Frazier v. Ind. Dept. of Labor*, No. IP01 - 0198 - C - T/G, 2003 WL 21254424, at *5 (S.D.Ind. Mar. 17, 2003). Defendant argues that the position expressed in the District's August 7, 2002 position statement to the EEOC is precisely the same position it has maintained throughout this litigation, and that all of the information contained in the position statement will be introduced at trial through witnesses and documents offered by both parties. Accordingly, Defendant argues, the position statement should be excluded because it would only repeat evidence already introduced by both parties. Plaintiff argues that the position statement contains false representations and inconsistencies that Plaintiff will demonstrate at trial. Plaintiff further argues that the position statement is admissible as evidence that Defendant's purported reasons for terminating Plaintiff were a pretext for the actual motive of racial discrimination.

Thus, this Court must evaluate the evidentiary issues differently based on whether the EEOC position statement is consistent with the position taken at trial or whether differences exist. If the statements made at trial are consistent with statements made to EEOC, then the presentation of the EEOC statement would be a "needless presentation of cumulative

evidence" and thus inadmissible pursuant to Rule 403. *See Flowers v. Komastu Mining Sys.*, 165 F.3d 554, 556 (7th Cir. 1999) (describing the exclusion of transcripts of investigatory interviews as cumulative where witnesses testified live).

If differences between the EEOC materials and the testimony of the live witnesses do exist, then the Plaintiff's argument for admission is really an argument based on the assessment of the credibility of defense witnesses. If the Defendant calls a witness who gives a statement while testifying that contradicts the position statement, then the Plaintiff's attorneys may attempt to impeach the credibility of the witness with a contradictory statement made by the witness. However, statements made to the EEOC do not carry significance independent of possible impeachment. Thus, this Court will exclude the EEOC submissions and grant the Defendant's motion *in limine*.

### 7. Statistical Evidence - D. Mot. 7

In D. Mot. 7, the Defendant seeks to exclude evidence pertaining to statistics of the promotion rates of District employees compiled by the Plaintiff and another District employee, Patricia Harmon. The Defendant first argues that since the District Court has granted it summary judgment on a failure to promote claim, the Plaintiff should be barred from presenting any evidence regarding promotion rates at the District. It cites the Seventh Circuit case *Kier v. Comm'l Union Ins. Cos.* for the proposition that statistical evidence pertaining to one type of employment decisions is not relevant to showing discrimination in other types of employment decisions. 808 F.2d 1254, 1258 (7th Cir. 1987). It also argues

that by attempting to admit statistical evidence of promotion rates, the Plaintiff is trying to resurrect its failure to promote claim that the District Court has already dismissed.

The Plaintiff counters by asserting that statistical evidence, whether or not rigorously statistical, is admissible to show that similarly situated non-protected persons received more favorable treatment. It cites three cases, one from the Seventh Circuit and two from the Fifth Circuit, in support of this proposition. *Kidd v. Ill. State Police,* 167 F.3d 1084, 1101-02 (7th Cir. 1999); *Casarez v. Burlington No. Santa Fe Co.,* 193 F.3d 334, 338 (5th Cir. 1999); *Walls v. Miss. State Dept. of Pub. Welfare,* 730 F.2d 306, 316 (5th Cir. 1984). In its reply, the Defendant asserts that while statistics can be relevant in a disparate treatment case, this is not such a case. Instead, the case is solely about whether the Plaintiff was terminated from her MAIII assignment because of her race and not whether the District took longer to promote the Plaintiff because of her race. Thus as the Defendant argues, if the Plaintiff had statistical evidence of the same type of alleged wrongdoing (i.e., terminations) it should be admitted, but if the Plaintiff presents any other statistical evidence (i.e., promotions) then it should be deemed irrelevant and not admitted.

Statistical evidence of promotion rates can be used in Title VII cases. However, such evidence must be tailored to issues related to the case at bar. *See Kier v. Comm'l Union Ins. Co.,* 808 F.2d 1254, 1258 (7th Cir. 1987). Plaintiff's statistical evidence purports to show that prior to 1995, the District did not employ a single African-American Management Analyst at the level of MAIII or higher. It also shows it now takes an African-American 20

30

months longer to become an MAIII than it does whites.

These statistics do not make any issue at trial in this case more or less probable. It does nothing to prove that Bland's decision to terminate Gage's probationary status was based on racial animus, the only decision remaining in this case. This is because the statistics deal with a wide variety of decision makers making very different employment decisions. When statistics involving a wide range of decision makers are being offered to suggest an inference of discrimination in such a single narrow context, the data's probative value diminishes to the point where it becomes irrelevant. Accordingly, D. Mot. 7 is granted.

### 8. Testimony of Callie Baird - D. Mot. 8

In D. Mot. 8, Defendant seeks to exclude testimonial and documentary evidence regarding an investigation conducted by Callie Baird ("Baird"), an outside consultant retained to submit a report regarding sexual harassment at the District and to issue recommendations (the "Baird Report"). The Baird Report focused almost exclusively on findings and recommendations to address problems with sexual harassment, but recommended a similar investigation into race discrimination. In its motion, the Defendant argues that the Baird Report and subsequent testimony of Baird should be excluded on the grounds that a report on sexual harassment is irrelevant to the question of racial discrimination; it represents a subsequent remedial measure; it is unfairly prejudicial; and constitutes impermissible evidence of bad acts. Furthermore, the Defendant contends that Baird should be excluded as she has never been disclosed as an expert witness and would be

an improper fact witness because she has no personal knowledge of the events of her testimony, only second-hand knowledge received from the 60 interviews she conducted while preparing the report.

For its relevancy argument, the District cites to a determination made by Judge Aspen at the summary judgment stage that "Gage has not established how the report supports her claim of systematic racial discrimination." *See Gage,* 2004 WL 1899902 at *15n. 14. The Plaintiff asserts that the recommendation of Baird that an investigation into race discrimination should be conducted is relevant because it shows a pattern of the District not to respond promptly and appropriately to the Plaintiff's discrimination claim and that the mechanisms the District put in place to deal with discrimination were essentially "smoke in mirrors" aimed at sweeping discrimination claims "under the rug". P. Resp. 8 at 2.

The determination of Judge Aspen that the Baird Report does not support a claim of systematic race discrimination is the law of the case. Under the "law of the case" doctrine, "a ruling made in an earlier phase of the litigation controls the later phases unless a good reason is shown to depart from it." *Tice v. American Airlines, Inc.,* 373 F.3d 851, 853 (7th Cir. 2004). As a result, this determination must be adhered to absent the showing of a good reason to depart. No good reason to depart exists. *See e.g., Reeves v. Federal Reserve,* 2004 WL 742248, No. 00C 5048, *5 (N.D. Ill. Apr. 6, 2004) (excluding evidence of sexual harassment in a race discrimination case on relevancy grounds). The Baird Report merely suggests that the District should conduct an investigation on the issue of race discrimination,

it makes no findings regarding race discrimination. Accordingly, D. Mot. 8 is granted.

## IV. CONCLUSION

For the reasons set forth in this opinion, this Court grants P. Mot. 2, D. Mot. 5, D. Mot. 6, D. Mot. 7, D. Mot. 8 and parts of P. Mot. 1, D. Mot. 1, D. Mot. 2 and D.Mot. 4; denies D. Mot. 3 and parts of P. Mot. 1, D. Mot. 1, D. Mot. 2, and D.Mot. 4; and reserves its ruling on P. Mot. 3 until a *voir dire* can be conducted.

SO ORDERED THIS 14TH DAY OF APRIL, 2005.

_Morton Denlow_
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**

Jennifer K. Soule
James G. Bradtke
Kelly K. Lambert
Soule, Bradtke & Lambert
155 N. Michigan Ave., Suite 500
Chicago, Illinois 60601
312-616-4422

Counsel for Plaintiff

Michael G. Rosenberg
Robert L. Abraham
James B. Murray, Jr.
100 E. Erie St., 3rd Floor
Chicago, Illinois 60611
312-751-6580

Allison Z. Stein
Connelly Sheehan Moran
150 S. Wacker Dr., Suite 1600
Chicago, Illinois 60606
312-372-1969

Counsel for Defendant

33